Littleton, Judge,
delivered the opinion of the court:
This is a suit by plaintiff, a classified civil service employee, to recover salary allegedly due her from the time of her alleged wrongful removal from her Government position in 1951 to the date of judgment, less any amounts earned by plaintiff during that time.
*389 Plaintiff bases ber right to recover on two grounds: (1) that her removal was procedurally defective in certain respects, and (2) that the officials who removed her on behalf of defendant acted without just cause, i. e., arbitrarily. Defendant contends that the record fails to establish either ground of recovery.
The evidence on which the commissioner of this court based his findings of fact consisted of testimony by the plaintiff and various documents introduced in evidence by both plaintiff and defendant. Among the exhibits in evidence is the transcript of the administrative hearing accorded plaintiff in 1951 prior to final adverse action on the charges leading to her dismissal, along with the documents introduced in evidence at that hearing. This exhibit was introduced in evidence in the instant case by plaintiff’s counsel and none of the witnesses who testified in the administrative hearing were called to testify in this lawsuit by either plaintiff or defendant. On the basis of the above-mentioned transcript and exhibits, the commissioner of this court made the following finding:
6. The evidence adduced at the hearing [the administrative hearing held by the Department of the Navy] establishes that plaintiff, during most of the period of time here in (Question, was argumentative, failed to get along well with other people, was uncooperative, inefficient in her work, and suffered from a persecution complex.
Plaintiff excepted to the above finding on the ground that it was based on the unsworn testimony of witnesses who were not called by defendant to testify before the commissioner of this court in the present hearing. In view of the fact that the transcript and exhibits were offered in evidence by plaintiff without reservation, we think that the commissioner was entitled to make Finding 6.
For a number of years prior to her discharge in 1951, plaintiff had been a civilian employee of the U. S. Naval Communications Station, New Orleans, La. On September 28,1951, plaintiff received from the Commanding Officer of her station a notice of proposed removal for cause to be effective October 12, 1951. Plaintiff was advised of her right to answer personally and in writing, which rights were to be exercised by *390 October 5, 1951. Plaintiff was further advised that upon request she would be granted a hearing at which she might be represented by counsel of her choice and might produce witnesses to testify on her behalf. Plaintiff was notified that during the notice period she would be carried in an annual-leave status.
The charges preferred against plaintiff were set forth in considerable detail and appear in full in Finding 2. The general charge was as follows:
Charges are hereby preferred against you for “unsatisfactory service” based on your current and past performance and work history. Investigation has led the Commanding Officer to the conclusion that you, as an employee, in your work habits, personal conduct while in the office, and performance of duty, are detrimental to this organization. Through repeated inaccurate statements, violations of personnel and operating regulations, and unwarranted antagonistic opinions, you have created an intolerable demoralizing influence on your fellow workers. Your repeated accusations against the officers and fellow workers have been found to be without foundation and are unprecedented in the history of this office.
Specific charges listed were: (a) intentional misstatement and exaggeration of material fact, (b) making false and unfounded charges or statements which slander or defame other employees, supervisors and officials, and reflect unfavorably on their honesty, integrity, motives, and efficiency; (c) careless workmanship resulting in waste and delay in production; deliberate iefusal to carry out a proper order from immediate supervisor; insubordination; (d) removing official records from the District Communications Office and, (e) disobedience to .constituted authorities and deliberate refusal to carry out proper orders from immediate superiors; insubordination. A description of specific offenses followed each charge.
Plaintiff denied the charges and requested a hearing. A hearing was held before an advisory board consisting of a naval officer as chairman and two civilians. The hearing, at which plaintiff was represented by counsel, took the better part of 3 days, October 10, 11 and 12, 1951. Witnesses appeared for plaintiff and for the charging officials and plaintiff’s counsel was accorded full opportunity to cross-examine *391 adverse witnesses. Following the hearing the board submitted its findings and recommendations. The board found charge (a) had been proved; that of the eight specifications of charge (b) four had been proved and that therefore the charge had been proved; that the one specification of charge (c) was proved to the extent that it had been established that plaintiff had argued with her supervisor; that to the extent that plaintiff was charged with refusal to send a correction through, the specification was not proved; and that charges (d) and (e) were proved.
It was the recommendation of the advisory board that in view of the fact that all charges had been proved, plaintiff should be removed from her position. The board then went on to note that during the course of the hearing it had become apparent to the members that plaintiff might be suffering from some mental and emotional illness; that her conduct during the hearing was not that of a normal person who might be expected to be tense on such an occasion; that plaintiff was constantly making hissing and muttering noises at witnesses, much to their discomfort. This document then revealed that at the close of the hearing the board orally recommended that the Commanding Officer of the Communications Station, where plaintiff was employed, consider having plaintiff given a physical and mental examination to determine her fitness for further Government employment with a view to possible disability retirement instead of discharge. The recommendation stated that this advice had been followed and the report of two physicians was, in part, as follows:
This applicant is quite conscientious and sincere. She gives no evidence of ever being a disciplinary or behavior problem. However, she gives definite evidence of having a major mental disorder rendering her unfit for further performance of duty. She presents a well systematized pattern of paranoid delusions. She has three brothers who are mental invalids.
It is recommended that she be hospitalized for extensive physical and mental evaluation.
On the basis of that medical report, the hearing board recommended that such a physical and mental evaluation and *392 study be made to determine plaintiff’s eligibility for disability retirement benefits.
On October 15, 1951, plaintiff acknowledged receipt.of an undated letter from the Commanding Officer notifying her that the board had recommended that she be given a medical examination and directing her to report to Lt. T. W. Klein-schmidt for a complete medical examination. On October 16, plaintiff acknowledged receipt of a letter of introduction to another Navy medical officer to whom she was being referred for examination. On October 17, 1951, plaintiff acknowledged receipt of a letter from the Commanding Officer advising her that since a final decision had not yet been reached in her case, her proposed separation date, earlier set for October 12, was changed to October 26, during which interim period she would be carried in an active-duty status. However, on October 19, 1951, plaintiff requested and received 30 days’ leave without pay to begin October 19,1951, and to end November 19,1951.
On November 7, 1951, the Commanding Officer wrote to plaintiff requesting her to report within 48 hours of receipt of the letter for the purpose of receiving another letter of introduction, this time to the U. S. Public Health Service, for further medical study and evaluation, in accordance with the recommendations of the hearing board. The Commanding Officer advised plaintiff that if she failed to avail herself of this opportunity for an examination, the Navy would “have no other alternative other than to proceed with recommendation 2 that you be separated for unsatisfactory service.” This appears to have been plaintiff’s first written notice of the hearing board’s alternative recommendation that she be separated for unsatisfactory service. For some unexplained reason, plaintiff failed to report for examination and on November 14, 1951, the Commanding Officer notified plaintiff’s attorney that in view of plaintiff’s failure to take advantage of the opportunity for a medical examination, the Navy had no alternative but to carry out the board’s recommendation that plaintiff be removed from Government service. In the course of this letter, the Commanding Officer told plaintiff’s counsel that he was unable to give him a copy of the board’s recommendations since they con *393 stituted a “classified document”. He noted that plaintiff’s counsel had been advised orally by the hearing board members of the substance of the recommendations, which were that plaintiff be removed from Government employment or that she be given an opportunity for a physical and mental evaluation and study to determine whether she was entitled to disability retirement.
On the same date, November 14, 1951, the Commanding Officer wrote to plaintiff herself and advised her that on the basis of the charges against her, and following consideration of her answer and the evidence submitted at the hearing, the hearing board had recommended her dismissal for unsatisfactory service if she was not found to be physically or mentally disabled for further Government employment. The letter informed plaintiff that since she had not applied for disability retirement as suggested, she was being removed from Government service for unsatisfactory service, on November 16, 1951. Plaintiff was also advised that she had 10 days within which to appeal this decision to the Under Secretary of the Navy. Plaintiff did not appeal within the 10 days.
Later in November, an official of the Navy Department apparently succeeded in persuading plaintiff to apply to the Civil Service Retirement Division for disability retirement and he wrote to the Commission forwarding to them plaintiff’s application. On December 18, 1951, the Chief of the Claims Section, Civil Service Commission Retirement Division, notified the Civilian Personnel Director of the Eighth Naval District that plaintiff had withdrawn her application for disability retirement.
On December 27,1951, some time after her time to appeal to the Under Secretary of the Navy had expired plaintiff ashed that an extension of the 10-day period to appeal be allowed. This request was denied on January 2, 1952.
On May 8, 1952, plaintiff wrote to the Regional Director of the Tenth U. S. Civil Service Region ashing for a hearing in connection with her removal. The Regional Director on May 16, 1952, advised plaintiff that a review of her case had persuaded him that there were no procedural irregularities in connection with her removal and that the Civil Service *394 Commission, was without authority to review her removal on the merits. Her request for a hearing was denied. Plaintiff filed suit in this court on January 26,1953.
Plaintiff first contends that her discharge was procedurally defective because of noncompliance with sections 2005 and 2006 of Title 5 of the United States Code. Section 2005 requires that a Government employee be given a 90-day warning of a proposed efficiency rating of “unsatisfactory” and a reasonable opportunity to demonstrate satisfactory performance. Section 2006 sets forth the procedures to be followed on the review of an efficiency rating, including the constitution of the boards of review and the conduct of the hearings.
It is a fact that in February 1951, plaintiff had received an efficiency rating of “satisfactory” and that no notice of unsatisfactory performance of duties was given plaintiff prior to the filing of charges against her in September of that year. A witness for the Navy indicated at the administrative hearing in October 1951, that there had been some sort of slip-up in not having given plaintiff a notice of unsatisfactory performance 90 days prior to her February rating date and that accordingly her superiors had no alternative but to give her a satisfactory rating, although her work had been far from satisfactory. As indicated by prior decisions of this court and as noted by plaintiff’s counsel in his brief, this court has little sympathy with such a position on the part of the Government. However, in the instant case the proceeding in connection with plaintiff’s removal was not a review of or a hearing on her efficiency rating but was rather a hearing on charges preferred against plaintiff looking toward her removal for cause. A rating of “satisfactory” does not preclude a dismissal for cause. DeBusk v. United States, 132 C. Cls. 790. The record compiled by the advisory hearing board of the Department of the Navy indicates that in many respects plaintiff was a conscientious and efficient worker; that she knew her job thoroughly and was capable of training others. On the other hand, her temperament was such, for whatever reason, that she was subject to violent outbursts of temper for no apparent reason except for recurring suspicions, largely unfounded, that those around her *395 were engaged in a conspiracy to ruin her reputation and inflict bodily harm upon her. Apparently her suspicions developed into firm convictions during the last year of her employment with the Navy and her consequent distracted behavior disrupted not only her own work but that of the other employees. Under all the circumstances, we do not think that plaintiff’s efficiency rating of “satisfactory” was inconsistent with her employers’ decision to remove her. Furthermore, inasmuch as the proceeding complained of was not one in connection with a review of her efficiency rating, the procedures required by sections 2005 and 2006 of Title 5 of the Code did not have to be followed.
Plaintiff suggests that the charges were not as specific as required by Navy and Civil Service regulations, but an examination of such charges persuades us that they could hardly have been more specific. It also appears that the reasons for discharge given by the hearing advisory board were based entirely upon the charges preferred against her and that plaintiff and her attorney were sufficiently notified to that effect.
Plaintiff also complains that notice of final decision was not delivered to her prior to the effective date of the adverse action, contrary to Navy Eegulations 45.5-3C. This does not appear to be established by the record. Plaintiff’s removal was at the close of business on November 16,1951, and she had had notice prior to that time that she would be removed on that date, with the reasons therefor.
With respect to plaintiff’s argument that two members of her advisory hearing board were not qualified under applicable Navy regulations to serve thereon, such lack of qualification has not been proved and in any event, plaintiff’s counsel reserved no exception to the constitution of the board at the time of the administrative hearing but on the contrary expressed specific satisfaction with the membership of the board and the manner in which it conducted plaintiff’s hearing.
Plaintiff states that no charge of mental or emotional disability was included in the charges preferred against her and yet the hearing board recommended that she be considered for disability retirement. This recommendation, we think, *396 demonstrates the hearing board’s fairness and sympathy for plaintiff’s condition.
Plaintiff also complains that she was not given a copy of the board’s findings and recommendation until the trial of the case in this court. It appears from the record that plaintiff was sufficiently notified of the substance of the findings and the recommendation. It is also noted that plaintiff failed to avail herself of the opportunity to appeal such findings and recommendation to the Under Secretary of the Navy within the time permitted by Navy regulations.
On September 28, 1951, the day on which charges were preferred against plaintiff, she was placed on annual leave for the notice period. In view of all the circumstances, it seems to us that such action by the Navy was fully justified. Plaintiff was paid from September 28, 1951 to October 19, 1951, on which latter date plaintiff requested that she be placed on 30 days’ leave without pay, which request was granted. On the effective date of plaintiff’s removal, November 16, 1951, plaintiff was paid for all terminal leave due her in a lump sum.
Inasmuch as plaintiff has failed to establish that her discharge was either procedurally defective or arbitrary, she is not entitled to. recover and her petition is dismissed.
It is so ordered.
Laramoke, Judge; Madden, Judge; Whitakee, Judge; and JoNes, Ghief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Paul H. McMurray, makes the following findings of fact:
1. Plaintiff was, at all times pertinent to the matter at issue, a civilian employee of the U. S. Naval Communications Station, New Orleans, Louisiana. She had been a civil service employee for approximately ten years prior to her separation from the service in 1951. Her efficiency rating as of February 28, 1951, was “satisfactory”. Her salary as of November 6, 1951, was $3,210 per annum. Although plaintiff served in the United States Army Reserve after World *397 War II and was honorably discharged therefrom, she saw no active service. She is, accordingly, not shown to be entitled to the benefits of the Veterans Preference Act in relation to her period of Federal Service.
2. On September 28,1951, plaintiff received, from the Commanding Officer of that station, a notice of proposed removal for cause as follows:
1. This is a notice of proposed adverse action.
2. Charges are hereby preferred against yon for “unsatisfactory service” based on your current and past performance and work history. Investigation has led the Commanding Officer to the conclusion that you, as an employee, in your work habits, personal conduct while in the office, and performance of duty, are detrimental to this organization. Through repeated inaccurate statements, violations of personnel and operating regulations, and unwarranted antagonistic opinions, you have created an intolerable demoralizing influence on your fellow workers. Your repeated accusations against the officers and fellow workers have been found to be without foundation and are unprecedented in the history of this office.
3. Among the many offenses committed the following specific offenses are as listed:
a. Intentional misstatement and exaggeration of material fact. (NCPI 45.11 End. (1) Item 28)
In reply to my letter of 4 June 1951, in which it was proposed to effect your suspension for cause, you made the following statements in your letter of 7 June 1951:
(1) You were insulted by your co-workers.
(2) You were referred to as being immoral.
(3) You were threatened with physical harm and placed in fear of being struck down to the deck.
(4) You.were subjected to fierce, severe, and unreasonable ridicule and scorn and sought to be humiliated and embarrassed by your co-workers. Careful investigation has shown these statements to be unfounded and unjustified. You are, therefore, charged with intentional misstatement and exaggeration of material fact.
b. Making false and wifotmded charges or statements which slander or defame other employees, supervisors.1 and officials, and reflect unfavorably on their honesty, integrity, motives, and efficiency. (NCPI 45.11, Encl. (1), Item 23)
On 12 June 1951, you addressed a letter to Mr. B. W. Bowles, the District Civilian Personnel Director, using *398 as your subject, “Proposed Suspension for Cause”, and as a reference, “Lt. W. H. Taber”. In paragraph. 1 thereof, you repeat the same statements previously made in your letter of 1 June 1951. In addition, in paragraph 2, you also insinuate that Lt. W. T. Taber either threatened or tried to knock you off a stool because of the letter you had received on 9 June 1951, which letter is presumed to be your notice of suspension. Further, you accuse Lt. W. H. Taber of assuming responsibility without authorization. In paragraph 3, you state Lt. W. H. Taber insulted you, referring to your moral character. In addition, you make an unfounded and indefensible statement that three or four weeks prior to 12 June 1951, Lt. W. H. Taber had several drinks of liquor and would not permit you to go to lunch or to the ladies room. Investigation and the statements of Lt. W. H. Taber as well as other office workers, prove these charges and/or statements to be without foundation. In view of the foregoing, you are hereby charged with making false and unfounded charges or statements which slander or defame other employees, supervisors, and officials and which reflect unfavorably on their honesty, integrity, motives, and efficiency.
On July 28, 1951, you wrote a personal letter to Mr. B. W. Bowles requesting an inventory of your annual and sick leave stating that the leave record in the Communications Office is incorrect according to your personal records. Tour letter was forwarded to the Supply and Fiscal Officer, U. S. Naval Station, who furnished a tabulation of your annual and sick leave record by letter of 22 August 1951.
On 3 September 1951 you addressed a letter to Lt. G. E. Brown, the Supply and Fiscal Officer, U. S. Naval. Station, stating the leave tabulation is incorrect. This letter also contains, unfounded charges that you are treated unjustly and discriminated against because of sex; that you are treated as though you do not work for the Navy; you do not get a relief period. Your letter also requested explanations of your 1949 suspension and your periodic step increase for 1951.
The Supply and Fiscal Officer advised by letter of 18 September 1951 that if your personally kept records did not agree to bring them to that office and the Civil Boll Disbursing Office would assist in reconciling your personal records.
On 10 September 1951 you addressed a letter to Mr. Harold B. Levy, Acting Industrial Kelations Officer, *399 U. S. Naval Station, requesting information about your periodic step increase for 1951, stating that you are the only one who has trouble getting your Form 50 for your step increase every year, and alleging that you did not receive your step increase on your salary check.
The Industrial Relations Officer advised you by letter of 18 September 1951 that your step increase was included in check received on 24 August 1951, the first pay day after date due.
On 13 September 1951 you addressed a letter to Mr. R. W. Bowles advising you were unable to talk to Lt. Comdr. Taber. In your letter you stated you wanted to talk to Lt. Comdr. Taber about a little Seaman by the name of Swartz whose actions are that which require a psychiatrist and his language was unbecoming to a lady and that he used profane language. You also advised that Lt. Comdr. Taber takes up for his co-workers, men only, and that he informed you that you could not type. You also stated that every employee yells at you and you were pushed and knocked all around.
On 11 October 1950, you wrote a personal letter to Mr. Robert Coquille, supervisor in charge of the Wire Room. Your letter of 11 October 1950 also establishes the charge that your improper personal conduct in the form of unwarranted antagonistic opinions and false statements concerning fellow employees and supervisors occurs intermittentlly.
c. Careless workmanship resulting m waste and delay in production (NCPI 45.11, Encl. (I), Item 10). Deliberate refused to carry out a proper order from immediate supervisor; insubordination (Item SO).
On' 12 April 1951, you were instructed to send a message from ComEIGrHT to BESCH (Imsmat, Houston). You individually made the determination that the third word in the first line, which was “be”, was not necessary and you omitted that word from the message in transmission thereby sending an incomplete instruction to another activity. When questioned, you argued with your immediate supervisor RMNC J. L. Unnerstall and refused to send correction through. Correction was transmitted by another operator. In view of the above, you are charged with careless workmanship resulting in waste and delay in production and insubordination in that you refused to carry out proper orders from your immediate supervisors. On 20 February 1951, the Officer in Charge of Traffic in the Navy Communication Station prepared an office memo to all military and civilian personnel. This memo was distributed to all em *400 ployees, who were requested to initial same, thereby indicating they had read and were cognizant of the instructions contained therein. You refused to initial the memo acknowledging that you had complied with instructions. You are further charged with failure or delay in carrying out instructions of supervisors.
d. Removing official records from the District Communications Office. (NCPI 45.11, Encl. (1), Item 15)
You are further charged with removing records from the District Communications Office. You have been specifically instructed not to make any extracts from the log or to remove the log from Boom 820 of the Communications Office without permission as it is restricted matter. However, on 31 May 1951 you removed the log from Hoorn 820, taking it to Mr. Lamkin’s office without requesting permission to do so. Lt. Comdr. W. H. Taber went to Mr. Lamkin’s office and told you that the logs were restricted and not to be removed without proper permission. The logs were returned to their proper file by Lt. Comdr. Taber.
e. Disobedience to constituted authorities and deliberate refused to carry out proper orders from Immediate superiors; insubordination. (NCPI 45.11, Encl. (1), Item 30)
On 5 June 1951 you were informed of the Communication Officer’s intention of proposing a five-day suspension for leaving work without authority. Immediately upon being so advised, your attitude assumed a negative approach in all phases. Specifically, you refused to follow the instructions of your immediate supervisor, Wave Mary Brennenstulil. Further, you did not comply with specific instructions from the CWO and refused to initial your completed work in accordance with Communication’s directives that all completed work must be initialed and without initials cannot be recognized as completed. To eliminate further delay after repeated attempts had been made to obtain desired work the wires had to be checked and initialed by a fellow worker. Further evidence of your refusal to properly perform your duties is demonstrated by your entering dash marks on the log instead of initialing work as required.
4. Previous infractions considered in proposed action are: 12 June 1951 through 17 June 1951, you were suspended for five (5) days for leaving the job to which assigned during work hours without permission as a result of charges preferred against you on 4 June 1951.
5. You have repeatedly been counseled in private by *401 Mr. Coquille in an effort to point out wherein your personal conduct required improvement and to. assist you in obtaining a harmonious working relationship with all of your co-workers and improve your efficiency and performance of your duties in the Communications Office. You have also been counseled by Mr. Lamkin, the Administrative Assistant, on repeated occasions. On 13 April 1951, it was necessary for the District Communication Officer to admonish you about the dispatch in which you omitted a word on your own initiative, because of the seriousness of this independent erroneous action. After listening to your replies, you were instructed as to the proper execution of your duties and personal conduct. In consideration of your expressed personal hardships, you were excused with a minimum penalty of an oral warning. At this time you were given every encouragement in the performance of your duty and you promised emphatically that you would perform your duties as they should be and would not create any further disturbances. However, you soon forgot this promise as well as others and pursued your ways of independent actions and expressions of opinions. Your officers and supervisors have shown yo,u every consideration and spent a disproportionate amount of time endeavoring to assist you in successfully and harmoniously performing your duties. However, you have failed to improve your personal conduct and work habits while in the office. In view of the foregoing, it is proposed to effect your separation from the rolls of the U. S. Navy Communication Station for “Unsatisfactory Service.”
6. You are hereby advised that you have the right to answer personally and in writing the charges preferred above to the Commanding Officer, U. S. Naval Communication Station, New Orleans, La., and to furnish affidavits in support of such answers. These rights must be exercised by 5 October 1951.
7. Further, upon request, you will be granted a hearing at which time you may be represented by a person of your choice and produce witnesses having direct knowledge of the circumstances resulting in the preferral of charges.
8. Your reply will be given every consideration and you will be advised in writing of the final decision. If your reply is found to be unsatisfactory, it is proposed to effect your separation effective close of business, 12 October 1951.
9. During the notice period, you will be carried in an annual leave status.
*402 3. On October 5,1951, tbe plaintiff answered the notice of proposed removal for cause, which she had received on September 28th, denied the truth of the charges as set forth therein and requested that she he granted a hearing prior to October 12, 1951.
4. On October 8, 1951, plaintiff was advised through her attorney by an official of the Department of the Navy that a hearing would be held in her case on October 10,1951. The hearing was concluded on October 12,1951, and the proposed date of separation changed to October 26,1951.
5. An advisory hearing board, consisting of a naval officer as chairman and two civilians, inquired into the truth of the charges against the plaintiff on October 10, 11, and 12, 1951. This is not a board set up or required by Regulations of the Civil Service Commission. It is a procedural step authorized by instructions governing civil personnel of the United States Navy.
6. The evidence adduced at the hearing establishes that plaintiff, during most of the period of time here in question, was argumentative, failed to get along well with other people, was uncooperative, inefficient in her work, and suffered from a persecution complex.
7. At the conclusion of the hearing on October 12, 1951, plaintiff’s counsel stated:
Without any effort or any attempt at effusiveness, I would like to say, I have been greatly impressed with the way this hearing has been conducted. I feel that you, as Chairman of the Board, have been very patient.
8. At the conclusion of the hearing, the advisory hearing board submitted the following findings and recommendation:
FINDINGS
The Hearing Board, after careful evaluation of all evidence presented in the hearing conducted on 10, 11, and 12 October 1951 on charges of unsatisfactory service preferred against Miss Josie M. Misuraca, Telegraphic Teletypewriter Operator, GS-3, by the Commanding Officer, U. S. Navy Communications Station, New Orleans, Louisiana, which charges are specified and detailed in Exhibit 2 of the record of procedure, submits its findings as follows:
*403 CHANGE 3(a): (One specification): Proved.
CHANGE 3 (b) : (Eight specifications) :
Specification 1: (Dealing with a letter written by Miss Josie M. Misuraca of 12 June 1951): Proved.
Specification 2: (Dealing with a letter written by Miss Josie M. Misuraca dated 23 July 1951): It is considered that this specification does not state an offense.
Specification 3: (Dealing with a letter written by Miss Josie M. Misuraca dated 3 September 1951) : Proved, except that portion stating that the leave tabulation was incorrect which was not proved, and that portion of the specification concerning requested explanations of the 1949 suspension and periodic step increase of 1951, which element is not considered to constitute an offense.
Specifications 4, 5, and 6: (Dealing with Supply and Fiscal Officer letter of 18 September 1951; Acting District Industrial Nelations Officer letter of 10 September 1951; and, Industrial Nelations Officer letter of 18 September 1951): It is considered that Specifications 4, 5, and 6 do not set forth offenses.
Specification 7: (Dealing with a letter of Miss Josie M. Misuraca dated 13 September 1951): Proved, except that portion of the specification which states that schwartz used profane language which was not proved.
Specification 8: (Dealing with a letter of Miss Josie M. Misuraca dated 11 October 1950). Proved.
Four specifications under charge 3 (b) having been proved, the charge is also proved.
CHARGE 3 (c): (One Specification) : Proved, except that portion of the specification which states that Miss Josie M. Misuraca argued with her immediate supervisor and refused to send correction through, which was not proved.
CHARGE 3 (d): (One specification) : Proved.
CHARGE 3 (e): (One specification) : Proved.
. RECOMMENDATION
In view of the fact that all charges (even though specifications and portions of some specifications of certain charges were not proved) preferred by the Commanding Officer, U. S. Navy Communications Station, New Orleans, Louisiana, contained in Exhibit 2 in the record of the proceedings in this instance, have been proved, it is recommended that Miss Josie M. Misuraca be re *404 moved as provided in the Standard Schedule of Disciplinary Offenses and Penalties for Civilian Employees in the Naval Establishment, NCPI 45.
During the course of the hearing and taking of testimony from the various witnesses, including Miss Misu-raca, it appeared to the Board at an early stage of the proceedings that a substantial underlying cause of her difficulties was an apparent mental and emotional illness. This opinion was further substantiated by her unusual conduct during the proceedings, which conduct appeared to be not merely the excitement or tenseness of a normal person against whom charges had been preferred. (As an example of this conduct, the record will reflect that at one time it was necessary for the Chairman of the Board to request that Miss Misuraca refrain from making hissing and muttering noises directed towards a witness. The record does not fully disclose the extent of the hissing, facial grimaces, and disturbing conduct on the part of Miss Misuraca, since the Chairman chose to ignore much of this rather than cause further dissension at the hearing).
The Board, accordingly, recommended orally upon the conclusion of its hearing that the Commanding Officer, TJ. S. Navy Communications Station, New Orleans, Louisana, consider having the adverse employee examined both physically and mentally to determine her fitness for continued government employment.
This procedure was followed and the report of two physicians making the examination accompanies the record. Attention is invited to the report of lt. bxeiNsci-imidt, mo, tjsN, who is attached to the Psychiatric Service, U. S. Naval Hospital, Corpus Christi, Texas, which states in part as follows:
“This applicant is quite conscientious and sincere. She gives no evidence of ever being a disciplinary or behavior problem. However, she gives definite evidence of having a major mental disorder rendering her unfit for further performance of duty. She presents a well systematized pattern of paranoid delusions. She has three brothers who are mental invalids.
“It is recommended that she be hospitalized for extensive physical and mental evaluation.”
It is, accordingly, recommended that a physical and mental evaluation and study be made to consider Miss Misuraca’s competency for further employment, and that if it should be determined that she is physically or mentally disabled for government employment that she be given full and complete benefits accorded by law *405 to all civil service employees wbo are found to be physically or mentally disabled for further government employment, and that these benefits be given in lieu of any disciplinary recommendation made by this Board.
9. On October 15, 1951, plaintiff acknowledged receipt of an undated letter from the Commanding Officer of the U. S. Naval Communications Station, New Orleans, Louisiana, the text of which was as follows:
1. In view of testimony given during the hearing conducted in your behalf, the Board has recommended that you be given a medical examination to determine your physical fitness to perform the duties of your position and fitness for continuing assignment.
2. In accordance with reference (a) you are directed to report upon receipt of this letter to Lt. T. W. Klein-schmidt (MC) USNB, for a complete medical examination.
10. On October 16,1951, plaintiff acknowledged receipt of a letter of introduction, written by the Commanding Officer and addressed to one Commander H. M. Bobbins, a Navy medical officer at the U. S. Naval Station, New Orleans, Louisiana, which letter recited plaintiff was being referred for a medical examination in accordance with the provisions of Instruction 88.3-8 of Naval Civilian Personnel Instructions.
11. On October 17,1951, the plaintiff acknowledged receipt of a letter from the Commanding Officer which recited as follows:
Subj: Notice of proposed separation for cause; modification of
Bef: (a) CO, USNCS, NOLa Itr Serial 331 of 28 Sep 1951
1. By reference (a) you were advised of charges preferred against you for which it was proposed to separate you effective close of business, 12 October 1951.
2. A final decision could not be made by that date due to the length of time required for the hearing. You are advised that the proposed date of separation contained in paragraph 8 of reference (a), is hereby changed to close of business, 26 October 1951, in order to permit completion of the hearing transcript, review of findings and determination of final action to be taken.
*406 3. During this interim period you will be carried in an active duty status unless otherwise advised.
12. On November 7, 1951, the Commanding Officer addressed a registered letter to the plaintiff as follows:
In accordance with Navy Civilian Personnel Instructions 210.7-4a (2) and to assist you in making application for disability retirement, it is requested that you report to the U. S. Naval Communication Station, Eoom 845, Federal Building, New Orleans, Louisiana, within 48 hours after receipt of this letter (excluding Saturday and Sunday), for the purpose of receiving a letter of introduction to the U. S. Public Health Service, 210 State Street, New Orleans, Louisiana, for further medical study and evaluation.
This request is predicated on the recommendations of the hearing board which conducted the hearing recently held at your request. If you fail to avail yourself of this opportunity for an examination, this activity will have no alternative other than to'proceed with recommendation two that you be separated for unsatisfactory service.
Plaintiff acknowledged receipt of this letter by signing a return receipt on November 8,1951. At the trial plaintiff testified that she did “not remember getting this letter,” but in answer to the next question asked her, admitted that the signature on the return receipt was hers. Plaintiff testified that she did “not recall” why she failed to appear as requested by the letter.
13. On November 14,1951, the Commanding Officer wrote to plaintiff’s attorney as follows:
Eeference is made to your letter to me dated November 9,1951.
The recommendations of the hearing board in the case of Miss Misuraca constitute a classified document, addressed to the Commanding Officer, U. S. Naval Communication Station, New Orleans, Louisiana. It is regretted, therefore, that a copy thereof cannot be made available to you.
You were advised orally by hearing board members of the substance of those recommendations. Additionally, Miss Misuraca was similarly advised. The substance of the recommendations are repeated herewith:
(1) That Miss Misuraca be removed as provided in the Standard Schedule of Disciplinary Offenses and *407 Penalties For Civilian Employees In The Naval Establishment NCPI 45.
(2) That an opportunity be given Miss Misuraca to have physical and mental evaluation and study to consider Miss Misuraca’s competency for further employment, and that if it should be determined that she is physically or mentally disabled for government employment that she be given full and complete benefits accorded by law to all civil service employees who are found to be physically or mentally disabled for further government employment, and that those benefits be given in lieu of any disciplinary recommendation made by the board.
Two separate attempts have been made to give Miss Misuraca the opportunity outlined in (2) above. Every facility at the disposal of this Command was-made available to her to carry out that opportunity, including transportation, escort, and all other expenses extended thereto. Each offer thus made has been ignored.
It is regretted that no alternative remains available to me but to carry out the recommendation as set forth in (1) above.
14. On November 14,1951, the Commanding Officer wrote to plaintiff as follows:
Subj: Removal for cause; notice of
Ref: (a) CO, USNCS, NOLa ltr Serial 331 of 28 Sep 1951
1. By reference (a) charges were preferred against you for “unsatisfactory service” citing specific offenses committed and for which it was proposed to effect your separation.
2. You were afforded an opportunity to reply to the charges personally and in writing and to furnish affidavits in support of your answers. You were also granted a hearing at which you were present, and represented by a person of your choice and produced witnesses of your choice.
3. Your reply and testimony at the hearing have been reviewed and given every consideration- The hearing board made the following recommendations: (1) that you be given the opportunity to apply for disability retirement, and (2) that you be given a medical examination for the purpose of submitting such application to the Civil Service Commission for consideration. You were afforded the opportunity to submit an application for retirement disability and to be given a medical examination, but you refused to avail yourself of these oppor *408 tunities. It lias been, determined in view of tbe above that yon should be removed for “unsatisfactory service”. Therefore, you will be separated from the rolls of the U. S. Naval Communication Station, New Orleans, Louisiana, at the close of business 16 November 1951.
4. You are hereby advised of your right to appeal to the Under Secretary of the Navy, via the Commanding Officer, U. S. Naval Communication Station, New Orleans, Louisiana, and the Chief of Naval Operations, Navy Department, Washington 25, D. C., within ten (10) working days from date of receipt of this notice.
15. On November 28, 1951, after the plaintiff had been separated from the service, an official of the Department of the Navy wrote to the Director of the Tenth U. S. Civil Service Region as follows:
In order to assist a former Navy employee in obtaining Disability Retirement, there are forwarded herewith Standard Form 2801, Application for Retirement, of Miss Josie Mary Misuraca, and Standard Form 18, Certificate of Medical Examination, completed by two Navy doctors. It _ will be noted that Dr. II. M. Robbins examined Miss Misuraca for physical fitness and Dr. G. W. Kleinschmidt for mental fitness for continued performance of duty.
Attention is invited to the remarks of Dr. Kleinschmidt on page 2 of Standard Form 18. It is requested that if possible arrangements be made for a further mental evaluation.
In reviewing Miss Misuraca’s personnel folder, it has been noted there are conflicting dates of birth. All official personnel papers in the jacket indicate date of birth as 29 November 1908 until 1945, at which time Miss Misuraca apparently changed her date of birth to 29 November 1915. It is firmly believed that regardless of the conflicting dates of birth this is one and the same person. This is readily determined by the comparison of educational and experience qualifications, the addresses given, and handwriting.
16. On November 29,1951, an official of the Department of the Navy wrote to the Chief of the Retirement Division, U. S. Civil Service Commission, forwarding with his letter plaintiff’s application for retirement.
17. On December 18,1951, the Chief of the Claims Section, Retirement Division of the Civil Service Commission wrote *409 to the Civilian Personnel Director of the Eighth Naval District as follows:
The application for disability annuity under the Civil Service Retirement Act filed by Josie M. Misuraca, Telegraphic Typewriter Operator, U. S. Naval Communication Station, New Orleans, Louisiana is being dismissed in accordance with her request of December 11, 1951.
The plaintiff admitted at the trial that she had requested that her application for disability retirement be dismissed.
18. On January 2, 1952, the Commanding Officer wrote to the plaintiff as follows:
1. Reference your letter of 27 December 1951 in which you request an extension of the period of time allowed for filing an appeal from removal action, any necessary forms, a copy of the NCPI regarding such appeals and the recommendations of the Advisory Hearing Board.
2. Reference (a) (received by you on 15 Nov 1951) advised you of your right to appeal to the Under Secretary of the Navy via the Commanding Officer, U. S. Naval Communication Station, New Orleans, Louisiana, and the Chief of Naval Operations, Navy Department, Washington, D. C. within 10 working days of the date of receipt oi final notice. By references (a) and (b) you were advised of the substance of recommendations of the Advisory Hearing Board. Your legal counsel was also advised orally and by reference (c) of the substance of the Board’s recommendations.
3. You were afforded ample opportunity to file an appeal within the time limits prescribed by regulation. You had legal counsel at the time of receipt of final notice and were aware of your appeal rights at that time. Instead, you elected to file application for disability retirement; however, this activity has been advised that on 11 December 1951 you requested the Civil Service Commission in Washington to dismiss your application.
19. On May 16, 1952, the Regional Director of the Tenth U. S. Civil Service Region wrote to the plaintiff as follows:
Receipt is acknowledged of your registered letter of May 8, 1952, requesting that you be granted a hearing in connection with your removal from a position with the Navy. Your letter was received in this office on *410 May 16, 1952. Attempts were made by the Post Office Department to deliver your letter earlier, but it was addressed to me with instructions that it be delivered to the addressee only and since I have been out of my office frequently, delivery was not possible.
Information available to this office indicates that you were removed from your position in the Navy for cause and that the prescribed procedures were followed in effecting your removal. The Civil Service Commission has authority to investigate to insure that the proper procedures were followed, but the Civil Service Commission is without authority to review your removal on the merits of the removal. Accordingly, your request for a hearing and review of the action taken by the Navy cannot be granted. I have not gone into detail in replying to your letter as I have been advised by Mr. McDougall that he outlined this situation fully to you at the time of a recent interview with you.
20. The decision of the Commanding Officer with respect to the removal of the plaintiff in this case was based upon substantial evidence. It appears that the Commanding Officer provided a hearing for her, timely advised her and her attorney of her rights and sought for her the opportunity to apply for disability retirement, which she was unwilling to accept.
21. Although plaintiff insists that she has been mistreated, insulted, physically assaulted and embarrassed by ridicule and various types of horseplay, there is no specific evidence, other than her testimony, to support the more serious charges which she has made. These charges include being “cursed”, “insulted”, physically injured, threatened with bodily harm, and shoved or knocked to the floor by other employees. She is a sensitive person who seems to resent being told about errors in her work, feels that other employees frequently talk about her, has ideas of persecution, finds it difficult to enter into or overlook practical joking, and has not been able to get along well with others. Although some of the specifications set out, under charges preferred against plaintiff, were “not proved” according to the findings of the Advisory Hearing Board, it was held that other specifications were “proved” with the result that she was found guilty of all charges formally made. Begardless of the charges made against her, however, she has never been given an “unsatisfactory” effi *411 ciency rating for tbe period involved in this action. One of ber supervisors attempted to explain tbis by stating that her work was “unsatisfactory”, but tbe approved procedure for giving an employee “warnings” during a 90-day period prior to the assignment of such a rating was never carried out in plaintiff’s case.
Tbe official payroll records of tbe Department of tbe Navy reveal that full salary for work status, sick leave and annual leave was paid plaintiff from September 28,1951, to October 19, 1951, on which latter date she was placed on 30 days’ leave without pay pursuant to her own request. When plaintiff was removed on November 16,1951, she was paid for all terminal leave in a lump sum.
22. Plaintiff is presently employed at a salary of $180 per month. Her earnings since being separated from Federal Service have been as follows:
1952-$1,095.55
1953- 2, 558.63
1954- 2,917.76
CONCLUSION 03T LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.