MaddeN, Judge,
delivered the opinion of tbe court:
The plaintiff, a veterans preference eligible, sues to recover Civil Service pay lost as a result of an alleged illegal removal for cause from his position of attorney-adviser in tbe Chicago Chemical Procurement District of the Army, effective April 3,1953.
The plaintiff contends that his removal was procedurally defective under the Veterans Preference Act of 1944,58 Stat. 390, 5 U. S. C. 863, the Performance Eating Act of 1950, 64 Stat. 1098, 5 U. S. C. 2001, Civil Service regulations, and regulations of the Department of the Army.
On August 15,1951, plaintiff received an excepted appointment to the position of attorney-adviser, GS-12, in the Chicago Chemical Procurement District, Legal Division, Chicago Procurement Office, Corps of Engineers, Department of the Army. This appointment was subject to the satisfactory completion of a trial period of one year. At the time of his appointment plaintiff was approximately 59 years of age. He was a member of the Bar of the State of Michigan and had been engaged in private practice in that State since 1915 except for various tours of duty with the Army which were usually as a lawyer. The 1951 civilian appointment appears to have been his first Civil Service position.
As legal adviser, the plaintiff was responsible directly to Colonel Victor C. Searle, the commanding officer of the Chicago Chemical Procurement District. His duties included all the legal work pertaining to the administration of contracts, purchase documents and changes and modifications thereto. Among other things, the plaintiff, as legal adviser, had frequent contact with the Chief of the Operations Division, the Chief of the Procurement Branch, and also with *587 tbe contracting officers. His office was under tbe operational direction of tbe Chief of tbe Operations Division.
On January 28, 1952, approximately five months after plaintiff was appointed to the position of legal adviser in Chicago, he was advised by Colonel Searle, the commanding officer, that a memorandum drafted by him on January 18, 1952, was unsatisfactory in several respects. Colonel Searle suggested ways in which plaintiff’s work might be improved. On April 1, 1952, Colonel Searle addressed another memorandum to the plaintiff in which he again pointed out deficiencies in plaintiff’s performance of the duties of his office. In this memorandum Colonel Searle stated that while no single one of the specific instances referred to in the memorandum was critical, they represented a continuation of the type of deficiencies which had been previously discussed with the plaintiff, both orally and in writing, and consisted in general of a failure by the plaintiff to grasp the essentials of the problems presented to him, a failure to render clear and pertinent decisions and recommendations which would take into account all of the relevant factors, and a continued preoccupation with inconsequential details at the expense of the important issues involved in each problem. Colonel Searle’s memorandum closed with the statement that any written comments which plaintiff might care to submit in connection with the criticisms would be carefully considered. The record does not indicate what, if any, response plaintiff made to Colonel Searle’s memorandum.
On August 12,1952, at Colonel Searle’s request, the plaintiff addressed a memorandum to Colonel Searle stating that it was his present intention to retire from Government employment on or before March 30,1953, in order to secure the benefits of the Reserve Officers’ Retirement Act and whatever benefits he might have under the Social Security Act.
On August 15,1952, the Chief of the Procurement Branch addressed a memorandum to Colonel Searle complaining about the inadequacies in the services being performed by the legal adviser’s office under the supervision, of the plaintiff On August 19,1952, Lt. Col. Lockwood, a reserve officer who had just performed two weeks of active duty in the Chicago office, wrote to Colonel Searle complaining about the work of *588 the plaintiff. Colonel Lockwood recommended that Colonel Searle procure the resignation of the plaintiff and give another employee in the office of the legal adviser an opportunity to do the work of the legal adviser. The subordinate employee referred to was a Mr. Salvi who held the position of assistant legal adviser. Captain Graber, another reserve officer serving on active duty in the Chicago office from July 7 to July 20,1952, also addressed an undated memorandum to Colonel Searle complaining about the poor work of the plaintiff.
On September 12,1952, the plaintiff submitted to the commanding officer a memorandum in connection with certain termination procedures and on September 24,1952, the commanding officer replied to the plaintiff giving detailed criticisms of the procedures submitted by plaintiff.
On February 25,1953, Colonel Searle addressed a letter to the plaintiff advising him of the reasons which would necessitate giving the plaintiff an unsatisfactory performance rating for the year ending February 28,1953. This letter is set forth in full in finding 6 and reflects the previous criticisms of plaintiff’s work referred to above. On February 27,1953, Colonel Searle again wrote to the plaintiff and stated that because of the restrictions imposed by Civil Service regulations relative to the amount of advance warning time which must be given before an unsatisfactory efficiency rating was rendered (the regulations required 90 days’ warning) the plaintiff was being given a performance rating of “satisfactory”. Colonel Searle stated that on the rating form he had entered a remark as follows:
Above rating is “qualified”. Due to failure to observe advance warning time limitations required by regulations for administering an “Unsatisfactory” rating, the above is given.
On March 2, 1953, the plaintiff received a letter from Colonel Searle notifying the plaintiff that it was proposed to effect plaintiff’s removal on April 3,1953, for inefficiency. The letter contained a statement of charges which, except for slight changes in the final paragraph, were in substance the same charges which had been used to support the proposed unsatisfactory efficiency rating discussed in Colonel Searle’s *589 letter of February 25,1953 above. The plaintiff was advised of his right to answer the notice of proposed removal for cause personally and in writing and to submit any evidence desired within ten days from the receipt of the notice. On March 3,1953, Colonel Searle placed a memorandum in the file concerning the performance of the plaintiff in which he reviewed the unsatisfactory nature of plaintiff’s work from the time of his appointment in August 1951. The memorandum stated that the plaintiff had indicated to Colonel Searle his intention to retire as a reserve officer when he reached the age of 60 in August 1952 and that in view of the difficulty of obtaining a qualified replacement, Colonel Searle had elected to allow the plaintiff to continue in his position rather than to initiate separation procedures. Colonel Searle also stated that he had wished to avoid placing any unfavorable material in the plaintiff’s official record, if possible. Colonel Searle then stated that in August 1952 the plaintiff had indicated a desire to remain in his Government position until March of 1953 in order to establish his eligibility for Social Security benefits. He stated that he had told the plaintiff he was dissatisfied with his work and would have to initiate his separation unless the plaintiff really intended to resign in the near future. He noted that the plaintiff then gave him the written statement of August 12,1952 indicating his intention to retire on or before March 30,1953. The memorandum indicates that discussions as to the plaintiff’s retirement continued into the spring of 1953. Colonel Searle concluded his memorandum by stating that he felt it would have been preferable to have been more explicit by memoranda to the plaintiff’s 201 file beginning in April 1952 and that he should have promptly initiated separation procedures.
On March 12,1953, the plaintiff replied to Colonel Searle’s letter of March 2,1953 and stated that the proposed removal action was in violation of the Performance Eating Act of 1950, that he had been given a rating of satisfactory and that the charges supporting the proposed removal action related to the same period of time covered by the satisfactory performance rating. Plaintiff denied all the charges made against him.
*590 On March 18, 1953, plaintiff was notified by the civilian personnel officer that the proposed separation for inefficiency had no relation to plaintiff’s performance rating and plaintiff’s attention was called to civilian personnel regulation S-l, 4-3b, which provided that an employee might be separated for inefficiency whenever deficiencies in performance of duties warranted such action even though the employee’s last performance rating on record might have indicated satisfactory performance of duties. The letter stated that plaintiff’s reply to charges of inefficiency had not satisfactorily disproved any of the facts alleged in the letter of charges and that it had been decided to remove plaintiff for inefficiency at the close of business on April 3, 1953. Plaintiff was advised of his right to request a review of the decision under the grievance procedure provided for in Army civilian personnel regulations, or, in view of his veteran preference status, to appeal to the Director of the Seventh Eegional Office of the United States Civil Service Commission in Chicago, Illinois. The plaintiff was advised that if he elected to appeal to the Civil Service Commission, he might not take advantage of the grievance procedure in the Department of the Army.
On April 1, 1953, the plaintiff took an appeal to the Seventh Eegional Office of the United States Civil Service Commission. On April 3, 1953, the plaintiff was removed from his position. On April 8, Colonel Searle prepared a memorandum for the file analyzing the plaintiff’s answer of March 12,1953, to the letter of charges. On April 9,1953, Colonel Searle executed an affidavit stating that on April 3, 1953, he had effected the separation of the plaintiff for inefficiency and that the circumstances surrounding such action were fully discussed in his memoranda for the record on March 3, 1953, and on April 8, 1953, which memoranda and attachments thereto were incorporated in and made a part of the affidavit.
On May 11, 1953 a hearing on the plaintiff’s removal was held by the Seventh Eegional Office of the Civil Service Commission under section 14 of the Veterans Preference Act of 1944. The plaintiff appeared in person and was represented by counsel. Colonel Searle appeared for the employing *591 agency and the plaintiff’s assistant in the office of legal adviser, Mr. Salvi, appeared and testified for the plaintiff. There were no other witnesses. In support of its separation action the Department of the Army, through Colonel Searle, introduced in evidence the various memoranda, letters and affidavit of Colonel Searle discussed above, concerning the unsatisfactory nature of plaintiff’s work. Colonel Searle attempted to question the plaintiff at the hearing concerning his work and his intention to retire. For the most part, the plaintiff’s answers were vague and unresponsive. Mr. Salvi gave testimony for the plaintiff but his testimony was also vague and inconclusive. The plaintiff’s attorney appears to have taken the position primarily that the separation was in violation of the Performance Eating Act of 1950. He introduced in evidence statements and affidavits concerning plaintiff’s prior satisfactory service while on active duty in the Army.
On June 1, 1953, the Seventh Eegion of the Civil Service Commission rendered a decision disapproving the removal of plaintiff from his position and recommending that he be restored to his position retroactively to the date of his separation. In his analysis of the evidence, the Civil Service Examiner stated that no memorandum was issued to the plaintiff regarding his inefficiency during the period of his employment, although,there was evidence that Colonel Searle had on more than one occasion “discussed differences of opinion as to the appellant’s deficiencies in the conduct of his position.” In passing, we find this statement of the Civil Service Examiner somewhat curious in view of the fact that the agency’s Exhibit 9 referred to later in the Examiner’s opinion included three memoranda to the plaintiff concerning his unsatisfactory performance of duties, one dated April 1, 1952, another dated September 12, 1952, and a third dated September 24, 1952. In his findings and recommendations the Civil Service Examiner pointed to the many letters of commendation regarding plaintiff’s active duty in the Army, as well as letters of commendation from judges and other lawyers regarding the plaintiff’s capabilities in the private practice of law. The Examiner then stated that while the agency was not satisfied with the plaintiff’s performance of *592 duty, the record did not disclose that their complaints were brought to the attention of the plaintiff in any way except in an informal manner; that the agency could have separated the plaintiff for unsatisfactory performance during his trial period but it had not done so. He stated that the agency had not proved that the Government had suffered because of the alleged unsatisfactory work of the plaintiff nor that the decisions rendered by the plaintiff had been substantially wrong. He noted that the agency’s primary complaint seemed to have been “that it was difficult to get a foursquare decision [from the plaintiff] on a certain set of circumstances.” He stated that in view of the plaintiff’s long years of service in the Federal Government (apparently meaning his service on active duty with the Army and not as a civilian employee of the Federal Government), it was believed that he was entitled to be “officially told if he was not performing his duties properly.” The Examiner stated that there was no evidence that this was done. He concluded that in the light of all the circumstances, he was of the opinion that the separation of the plaintiff was an unreasonable act not made for such cause as would promote the efficiency of the service within the meaning of section 14 of the Veterans Preference Act.
On June 16,1953 the Chicago Chemical Procurement District appealed the decision of the Seventh Region of the Civil Service Commission to the Board of Appeals and Review in Washington. In addition to the documents which had been before the Examiner in the hearing at the Seventh Regional Office, the employing agency submitted four additional documents as follows: Memorandum dated June 5, 1953 from Mr. Robert R. Bright who had been attorney-adviser in the Office, Chief Chemical Officer, during the time plaintiff had served as legal adviser for Colonel Searle. Mr. Bright stated that he had had numerous contacts with the plaintiff in connection with legal problems arising in the operation of the Chicago District. He stated that he felt the plaintiff had been very deficient in his comprehension of the various legal aspects of procurement law and that he, Mr. Bright, had communicated that opinion to Colonel Searle during the course of the plaintiff’s employment. He then gave several *593 specific instances to illustrate poor performance of duties by the plaintiff. The second document submitted in connection with the agency appeal was an affidavit dated June 8, 1953, by Eugene F. Graber, a reserve officer who had served for two weeks on active duty in the Chicago Chemical Procurement District and had had numerous contacts with the plaintiff during that period. Mr. Graber stated that in his opinion the plaintiff was inefficient and did not understand the work of his office. The third document was an affidavit dated June 12, 1953 executed by Lt. Col. Vess, Deputy Chief of the Operations Division in the Chicago office of the employing agency. In that affidavit Col. Vess stated that in his many contacts with the plaintiff he had never been able to secure any dependable assistance on contractual matters of a legal nature from the plaintiff. Col. Vess gave two specific examples to illustrate the poor performance of the plaintiff. Col. Vess expressed the opinion that the Procurement Mission of the Chicago District had been impaired to a great extent by the poor performance of the plaintiff as legal adviser. The record does not indicate the nature of the fourth document submitted to the Board of Appeals and Review by the employing agency.
On July 2,1953 the Board of Appeals and Review sent to plaintiff the written appeal of the employing agency and stated that the plaintiff might submit a reply within ten days of receipt of the letter. The appeal noted that the Civil Service Examiner had apparently overlooked the memoranda written to the plaintiff by Colonel Searle with regard to his inefficiency. It stated that the agency had furnished the regional office of the Civil Service Commission with the names of certain officers who had been critical of the operations of the plaintiff’s office but that the Examiner had not solicited their opinions. It noted that the record before the regional examiner had included an affidavit of Col. Lockwood which was very unfavorable to the plaintiff, but that the Examiner had not mentioned this affidavit in his analysis of the evidence. It said that since neither Captain Graber nor Mr. Bright had been contacted by the regional office of the Civil Service Commission as had been expected, their statements had been subsequently obtained and were being *594 submitted with the appeal to the Board of Appeals and Review. The appeal noted that while the plaintiff had submitted evidence of his capabilities in the private practice of law and of his performance of duty while in active military service, he had not offered any similar evidence by persons having knowledge of his performance of duties as a civilian lawyer in the Chicago office of the Chemical Procurement District. It pointed out that although Mr. Salvi, the plaintiff’s subordinate in the legal adviser’s office, had testified for the plaintiff, his testimony and affidavit were largely noncommittal. It also pointed out the evasiveness of the plaintiff’s own testimony which was replete with such responses as “I can’t remember” and “I have no idea.”
The additional statements and affidavits submitted by the agency in support of its appeal were not received by the plaintiff and the plaintiff went to Washington and examined these documents which were on file with the Civil Service Commission. He made detailed notes of the contents of these documents for the purpose of his answer to the agency’s appeal. On July 16, 1953, he submitted to the Board of Appeals and Review his statement in reply to the appeal of the employing agency.
On June 11, 1954, the Board of Appeals and Review submitted to the Civil Service Commission its opinion that on the basis of all the factual information of record, the specifications supporting the charges preferred against the plaintiff by the employing agency were, with the exception of the first specification, sufficiently specific and detailed to meet the procedural requirements of the Veterans Preference Act of 1944 and the regulations of the Civil Service Commission. The Board also expressed the opinion that on the merits, all of the specifications except the first one had been substantiated and had justified the removal action taken pursuant to section 14 of the Veterans Preference Act. The Board recommended that the Commission approve the Board’s decision that the removal action was warranted and justified and that the previous decision of the Seventh Region disapproving the removal action be reversed. In its opinion the Board stated that the Seventh Region had “permitted extraneous matters to enter into its decision and *595 considered only the matter of performance rating.” The Board pointed ont that the Begion had not resolved the questions which it was required to resolve in connection with a discharge for cause under section 14 of the Veterans Preference Act i. e. whether or not the charges were sufficiently specific and detailed, and whether or not the charges were substantiated by the record in the case. The Board then proceeded to examine each specification contained in the charges and the evidence furnished by the agency in support of such charges. As noted above, the Board decided that the first specification concerning plaintiff’s lack of supervision of his subordinate, Mr. Salvi, was too vague and must therefore fall as procedurally defective. As to all other specifications, the Board found them sufficiently specific and detailed and supported by the evidence introduced at the hearing before the Seventh Begion.
In its analysis of the various specifications it does not appear that the Board of Appeals and Beview relied upon the documents submitted by the employing agency for the first time in connection with its appeal. In the last paragraph of its analysis of the specifications and the evidence the Board stated:
Affidavits and memoranda in the file furnished by various officials of the agency who had occasion to request legal advice from Mr. Atkinson and who had personal knowledge of the specific incidents cited in the letter of charges, tend to support the allegations regarding the deficiencies for which he has been criticized and justify the conclusion his work has not been commensurate with his grade, position, and responsibilities; such as, failure to grasp the essentials of problems as presented to him; failure to take into account all relevant factors.; preoccupation with inconsequential details which divert his attention from the real points involved; and failure to give a clear-cut decision.
The latter portion of the above-quoted statement beginning with “such as, failure to grasp the essentials of problems” etc., refers to memoranda addressed to the plaintiff by Colonel Searle and they were in evidence before the Seventh Begion in connection with the hearing.
The Board of Appeals and Beview then submitted the case to the full Civil Service Commission which, after con *596 sidering the evidence, determined that the charge of inefficiency upon which the removal action was based was sustained by the weight of the evidence. On September 3,1954, the Commission advised the employing agency that the removal action in plaintiff’s case was warranted and justified. On the same date the Commission communicated its decision to the plaintiff. On November 5, 1954, the Commission responded to an inquiry made on behalf of the plaintiff by a United States Senator, pointing out that the initial decision by the Seventh Region of the Commission had been in error in not restricting its considerations to the determinations required in an appeal under section 14 of the Veterans Preference Act and in adjudicating only those questions which might properly have arisen under the Performance Rating Act of 1950, which Act had no bearing on plaintiff’s case. On the matter of whether or not the Commission had considered the document submitted by the employing agency in connection with its appeal, which documents had not been in evidence before the Seventh Region, the Commission stated that it had accepted in evidence the agency’s appeal letter and all supporting documents; that the plaintiff had been given an opportunity to review such material and to submit an answer if he so desired; that the answer which he submitted, together with enclosures, had been made a part of the record and received as evidence and that the Commission had given such weight to unsworn testimony submitted by both the plaintiff and the employing agency as the record warranted.
Plaintiff contends first that his removal was invalid because it violated his rights under the Performance Rating Act of 1950. The Performance Rating Act of 1950 was not involved in plaintiff’s removal which was carried out under section 14 of the Veterans Preference Act. As we stated in Misuraca v. United States, 135 C. Cls. 387 and in DeBusk v. United States, 132 C. Cls. 790, the fact that an employee has received an efficiency rating of satisfactory does not preclude the employing agency from dismissing that employee for cause. In the Misuraca case the plaintiff had been given a rating of satisfactory apparently because the agency had failed to observe the 90-day warning period requirement *597 of the 1950 Act and was therefore unable to give her the unsatisfactory rating it felt she deserved. As in the instant case, the employing agency had' no alternative but to give the employee a rating of satisfactory and it thereafter undertook to remove her for cause. In the examination of the charges on which plaintiff in the Misuraca case was removed, the court observed that although her efficiency rating was satisfactory, it was not inconsistent with the employing agency’s decision to remove her since the causes of removal were concerned more with the plaintiff’s personal behavior in the office than with the manner in which she performed her work. In the DeBuslc case the plaintiff also received an efficiency rating of satisfactory and was thereafter discharged for cause. As in the Misuraca case, the basis for the removal was not inefficiency but behavior problems on the part of the plaintiff which made him a difficult employee to deal with.
The instant case is distinguishable from the DeBush case and the Misuraca case in that the charges which formed the basis for the removal action were identical with the charges upon which the employing agency intended to base its proposed unsatisfactory efficiency rating. While, as stated by the defendant, the provisions of the Performance Eating Act of 1950 and the giving of a satisfactory rating under that Act to a Government employee will not preclude the removal of that employee for cause under another statute such as the Lloyd-La Follette Act or the Veterans Preference Act, where the cause of removal is based on the unsatisfactory performance of the employee in question during a period for which that employee was given a satisfactory performance rating, the employing agency has in such a case placed itself in an apparently inconsistent position which requires explanation. This problem was considered by the Court of Appeals for the District of Columbia Circuit, in Thomas v. Ward, 225 F. 2d 953. In that case the court held that although an employee may have been rated satisfactory under the Performance Eating Act of 1950, he may still be removed for cause under the Lloyd-La Fol-lette Act even though the charge was unsatisfactory performance of duties during the same period covered by the *598 performance rating of satisfactory. The court pointed out that performance rating procedures were devised for the purposes of promotion and retention priority, and that while an unsatisfactory performance rating given under the 1950 Act might lead to a dismissal for cause, it might also justify some less drastic personnel action such as the transfer of the employee to a different position, or his demotion to a less demanding job. In that case the court appears to have approved of the Navy Department’s position that the Performance Hating Act of 1950 should only be applied when the agency or department contemplates the continued employment óf a particular individual rather than his immediate removal under applicable removal laws. It also referred to the legislative history of the Performance Eating Act and noted that the attention of Congress had been called to the difficulty of removing an employee on the basis of an unsatisfactory efficiency rating. Congress appears to have felt that the enactment of the Performance Eating Act would have no bearing on the removal statutes then in effect.
We consider now the question whether or not plaintiff’s rights under section 14 of the Veterans Preference Act were violated.
The plaintiff contends that his rights under the Veterans Preference Act were violated because the Board of Appeals and Eeview of the Civil Service Commission received, considered and relied upon certain new evidence which the employing agency submitted to the Board in connection with its appeal from the decision of the Seventh Eegional Office. The evidence referred to by the plaintiff consisted of an affidavit of Eugene J. Graber, a reserve officer who served two weeks of active duty in the Chicago Chemical Procurement District during the summer of 1952, and an un-sworn statement given by Eobert E. Bright, a civilian employee of the War Department, in Washington, D. C. In its appeal from the Eegional decision the employing agency stated that the names of Mr. Bright and Captain Graber had been given to the Seventh Eegional Office of the Civil Service Commission in order that those men might be contacted in connection with the Commission’s investigation of the charges; that since they were not contacted as ex *599 pected, their statements were subsequently obtained for submission to the Board of Appeals and Review. The record indicates that Captain Graber had been contacted by a Civil Service Commission investigator prior to the hearing in the Seventh Region, and that Graber had refused to issue a statement at that time, although he subsequently advised the Commission that he would prepare an affidavit. The Civil Service investigator decided to submit his report without obtaining Captain Graber’s affidavit.
Proceedings before the Civil Service Commission and its regional agencies need not be cast in the mold of court proceedings. The Commission’s agents make investigations, interview persons who have, or might have, pertinent information, and gather documents and other writings which might be useful. If a hearing is held before an examiner, the witnesses who appear in person are required by Civil Service regulations to be sworn. There is, however, no power to subpoena witnesses for either side, and affidavits, letters and memoranda are received and given such weight as they seem to deserve. In the instant case, both the agency and the plaintiff introduced at the hearing before the examiner, numerous writings, most of which, perhaps, would not have been admissible in a lawsuit. Some of them would have been admissible, under a recognized exception to the hearsay rule, because they were not introduced to prove the truth of the statements made in them, but only to show that such statements had been made. If numerous persons who have to look to a Government lawyer for counsel and assistance have written that they regard his work as unsatisfactory, the mere fact that they so write is relevant evidence as to whether the service would be improved by his separation.
The appellate procedure before the Board of Appeals and Review of the Civil Service Commission is only a continuation of the effort to determine whether the agency’s action with regard to the employee should be allowed to stand, considering that the agency is primarily responsible for getting its work done. The appellate hearing may be de novo if that seems necessary or useful. Civil Service rules and regulations in effect at the time of the employing agency’s *600 appeal to the Board of Appeals and Eeview contained the following provision with respect to whether or not new evidence would be considered by the Board:
(c) Board, of Appeals and Review procedures. The Board of Appeals and Eeview will review the entire record of such further appeals. In its discretion, the Board may afford the parties an opportunity to appear personally and present oral arguments and representations on the procedural aspects of the case and merits of the appeal, but no evidence will be considered by the Board which could have been submitted at the time of the original appeal to the Office of the Chief Law Officer or regional office. If alleged new evidence is offered which was not available at the time of original appeal, the Board will consider whether the evidence is actually new and of such material consequence that the case should be remanded to the office of original jurisdiction. If the case is remanded the appeal will begin anew in the office of original jurisdiction. In exceptional cases the Board may in its discretion receive and consider new evidence without remanding the case and may afford the parties an opportunity to produce witnesses and cross-examine witnesses.[1]
In the instant case an affidavit and a written statement were added to the evidence which had not been introduced before the hearing examiner. The plaintiff’s attention was called to these documents and he examined them. If he had desired to introduce further evidence before the Board of Appeals and Eeview, there is nothing to indicate that he would not have been permitted to do so.
The new documents were of the same nature as those introduced before the hearing examiner. It is probable that their effect was only cumulative. But even if it was decisive, the plaintiff’s case is no better. He had no vested right that his case should be decided on an incomplete record, any more than the agency which separated him had such a right. Under all the circumstances we feel justified in concluding that the Board in accordance with the authority granted it in the last sentence of the above-quoted regulation exercised its discretion to receive and consider the new documentary evidence without remanding the case and in the light of the *601 record made in the Seventh Kegion we cannot say snch discretion was exercised arbitrarily.
The Board of Appeals and Beview in its decision reversing the decision of the Commission’s Seventh Begion made a careful analysis of the evidence. It concluded that the hearing examiner had misconceived the nature of the employing agency’s action in effecting the separation of the plaintiff, and had rendered his decision as though the action had been taken under the Performance Bating Act of 1950. The Board concluded that the plaintiff’s work was not up to the standard of his grade, position and responsibilities; that he failed to grasp the essentials of the problems presented to him and failed to take into account all relevant factors; that he was preoccupied with inconsequential details at the expense of the real points involved; and that he failed to give clearcut decisions. The Board’s analysis of the evidence and its conclusion from it were entirely reasonable, and in no way vulnerable to legal attack.
The plaintiff contends that his separation was illegal because the Board of Appeals and Beview concluded that one of the seven specifications under the general charge of inefficiency was invalid because it lacked definiteness. We see nothing in this contention. The Board was not bound to assume as a fact the bare possibility that the agency would have overlooked the defects of performance pointed out in the other six specifications, and retained the plaintiff in employment, if the charge found to be invalid in form had not accompanied the other six. The Board’s analysis of the evidence persuaded it that the matters charged in the six valid specifications, and proved, constituted ample ground for removal. The Board could not know to an absolute certainty that the removal would, in fact, have occurred, if the seventh specification had not been included in the charge. 'It did all that it could, as a practical matter, do when it concluded that there was enough in the six valid charges, and the evidence, to justify the separation. The plaintiff’s petition will be dismissed.
It is so ordered.
Laramohe, Judge/ Whitaker, Judge, and JONES, Chief Judge, concur.
*602 FINDINGS OF FACT
The court, haying considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff claims salary from April 8,1953, the effective date of his separation from Federal service. Pie is a citizen of the United States, a resident of the State of Michigan, and an honorably discharged veteran entitled to the rights and privileges provided by section 14 of the Veterans’ Preference Act of 1944 ( 5 U. S. C. 863).
2. On August 15, 1951, plaintiff received an excepted appointment to the position of Attorney-Adviser, GS-12, in the Chicago Chemical Procurement District of the Department of the Army, “subject to satisfactory completion of a trial period of one year.”
3. On December 29, 1950, the Department of the Army issued and the Civil Service Commission approved regulations pursuant to the Performance Rating Act of 1950. These regulations, designated as Department of the Army Civilian Personnel Regulations, CPR P4, continued in force at all times here pertinent. They provided inter alia, as follows:
1-2 (d) Efforts to improve employee performance will be made as soon as inadequate performance is observed. Efforts to reassign or remove employees will be made, without waiting until it is time to make an official appraisal, when efforts to improve inadequate performance do not prove successful. * * *
2-2 (a) At the earliest practicable date, and in any event not later than 30 days after the employee enters a new position, the supervisor will discuss the performance requirements with the employee and establish such requirements. * * *
2-3 (a) The supervisor and the employee should approach the setting of requirements with an open and flexible attitude. A realistic endeavor should be made to discover what performance is actually needed to achieve adequate results. The effect of existing working conditions and facilities on the level of performance that can be achieved and what experience has shown to be a practical performance level for the work should also be considered. When this information is available, a workable requirement can be determined. * * *
*603 3-3 In each instance in which improvement in performance or utilization is feasible, regardless of the rating given, a plan of action should be developed. Plans should be discussed with the appropriate civilian personnel office representative to gain the value of his experience with similar plans and problems. Plans should be then discussed with each employee to secure his views and cooperation. Factors to be considered in developing such plans are — * * *
g. Whether or not the employee should be reassigned, changed to lower grade or removed because of deficiencies which it is not found feasible to correct or avoid.
4-4 (d) The rating of “Unsatisfactory” will be given when the efforts to correct an employee’s inadequacies or to cope with them on the job have not proved successful. Certain safeguards are required by law to insure that this rating is carefully and deliberately weighed.
(1) Whenever appraisal of the employee’s performance reveals inadequacies which have not responded satisfactorily to normal supervisory measures, the employee will be given a warning letter. The warning letter will be issued at least 3 months and not to exceed 6 months in advance of a proposed official rating of “Unsatisfactory.” The warning letter will specifically include the following information:
(a) Performance requirement(s) which the employee has failed to meet.
(b) How the employee’s performance fails to meet the requirement (s).
(a) How the employee may improve his performance.
(d) That the. employee will have a reasonable opportunity to improve his performance.
(e) Date before which improvement must be shown.
(/) That the employee will receive a rating of “Unsatisfactory” if his performance fails to improve to meet the requirements.
(g) That he will be given a rating of “Satisfactory” if his performance does improve to meet the requirements.
(2) During the warning period, the employee will be given a reasonable opportunity and reasonable assistance to satisfy the requirements and will be advised from time to time on his progress.
*604 (3) If, at the end of the period specified in the warning letter, the employee fails to meet the requirement (s), the supervisor will prepare a brief statement indicating what the employee’s performance has been since the warning was issued and the efforts made to assist the employee to improve his performance. This statement, a copy of the warning notice, and a memorandum requesting approval of the “Unsatisfactory” rating will be submited through channels for review and forwarding, if warranted, to the division chief (or head of an organizational segment of similar level).
(4) When the division chief approves or disapproves a rating of “Unsatisfactory,” he will so notify the supervisor, the employee, and the civilian personnel office in writing.
(5) The warning notice will be filed in the employee’s official personnel folder on the temporary side until the expiration of the period specified therein. In the event the official rating is approved as “Unsatisfactory,” the notice will become a part of the permanent file. If the employee is rated “Satisfactory” or reassigned or removed before the notice expires, the notice will be removed and destroyed.
4. At the time of his appointment in August of 1953, plaintiff was approximately 59 years of age. He was a member of the Bar of the State of Michigan and had been engaged in the private practice of law in that State since 1915 except for various tours of active duty with the Army. The 1951 civilian appointment appears to have been his first with the Government.
5. The plaintiff was known as the “Legal Adviser” and was directly responsible to Colonel Victor C. Searle, the commanding officer of the Chicago Chemical Procurement District. His duties included all the legal work pertaining to the administration of contracts, purchase documents and changes and modifications thereto. Among other things, the plaintiff had frequent contact with the Chief of the Operations Division, the Chief of the Procurement Branch, and also with the contracting officers. His office was under the operational direction of the Chief of the Operations Division.
*605 6. On January 28,1952, and again on April 1,1952, plaintiff was informed in writing by the Commanding Officer of the Chicago Chemical Procurement District, plaintiff’s superior officer, that his work was unsatisfactory. Specific instances of plaintiff’s inefficient work were pointed out to him, and plaintiff was requested to comment on the criticisms made of his work. Again, on September 24,1952, plaintiff’s superior officer pointed out to him in writing instances of his inefficient work.
7. Early in 1952, plaintiff discussed with his superior officer the prospect of his retirement. On August 2, 1952, at the request of Col. Searle, plaintiff submitted a memorandum wherein plaintiff stated that it was his intention to retire from Government employment on or before March 30,1953. Plaintiff, however, was rather evasive and indefinite with respect to his retirement plans.
8. On August 15, 1952, the Chief of the Procurement Branch addressed a memorandum to Colonel Searle which was critical of the handling by the plaintiff of the claim of Rudy Manufacturing Company. The memorandum stated that a useful legal opinion on this claim was finally obtained from a reserve officer, Lt. Colonel Lockwood, while he was serving on two weeks active duty in the Chicago office. On August 19, 1952, Lt. Colonel Lockwood wrote to Colonel Searle, criticized the work of the plaintiff, and recommended that a subordinate employee in plaintiff’s office be considered as a replacement for the plaintiff. At about the same time, another reserve officer, Captain Eugene J. Graber, serving on active duty in the Chicago office, addressed a memorandum to Colonel Searle which was equally critical of plaintiff’s work as legal adviser.
9. On February 25, 1953, plaintiff received a letter from his superior officer, Colonel Victor C. Searle, as follows:
This is to advise you of the reasons which would necessitate giving you an “Unsatisfactory” performance rating for the year ending 28 February 1953.
On 28 January 1952, I issued to you a memorandum covering the unsatisfactory elements of your handling of problems in connections with the Keystone Gage and Tool Company contract, including a draft prepared by myself, as an example of satisfactory discharge of your *606 assigned responsibilities. In par. 3, thereof, I outlined specific principles of operation, which should. have been obvious to a person of your grade and military experience.
For a short period thereafter,. your work displayed some improvement. On this basis, and giving you the benefit of the doubt, you were given a “Satisfactory” performance rating on 15 February 1952.. At that time you were advised that it was barely “Satisfactory” and that continued improvement would be required.
Your work then deteriorated and on 1 April 1952 I again discussed it with you, citing examples in connection with—
a. Forms for contract termination;.
b. Inclusion of required contract articles.;
c. Use of “Patent Indemnity” clause in Shevlin contract;
d. Alabama tax laws in relation to Monsanto Chemical Co. operations.
At that time I pointed out, using the above as examples, the following characteristics of your work:
a. Failure to grasp the essentials of problems as presented to you.
b. Failure to give clear and pertinent decisions and recommendations, taking into account all relevant factors.
c. Preoccupation with inconsequential details which divert your attention from the real points involved.
Your supervision and direction of Mr. Salvi, during the period he was your assistant, was inadequate. On several occasions you indicated to me that you were reluctant to insist on punctuality, attention to duty, etc., since.he was “difficult to handle”. On each occasion, I advised you that it was your responsibility to either rectify the situation or initiate disciplinary action.
On about 15 October 1952, it came to the attention of Lt. Colonel Thomas, Executive Officer, that Mr. Salvi had established an office and was carrying on some private practice, handling some of it by telephone from this office and some during long lunch hours. Subsequently you indicated to me that you had suspected this from phone calls received in his absence. However, you had indicated no effective action to correct the situation.
During the summer of 1952 you were assigned to develop a procedure for handling termination in this *607 office. Based on your draft of 15 September 1952, I pointed out to you, in my memorandum of 24 September, 14 instances of ambiguity, failure to foresee and assign responsibilities, failure to cover essential points, and matters of form.
It was considered necessary to request a visit of assistance from Mr. Bright, Legal Adviser, Chemical Corps Materiel Command. After conference and review of your procedure, he recommended that it be discarded, and he prepared an outline of a basic plan which we are now using.
On or about 10 July 1952, a rather complicated claim submitted by Eudy Manufacturing Co., was submitted to your office for study. No results were forthcoming. It remained for a reserve officer on 2 weeks’ training duty, Lt. Colonel Fred S. Lockwood, to investigate the problem and propose a sound solution, which he did by memorandum of 14 August 1952. The Chief, Procurement Branch, commented as follows, “* * * the information submitted by Lt. Colonel Lockwood is the type of legal opinion to which the Procurement Branch is entitled but does not receive.”
During the period of a year referred to, repeated criticisms have been voiced by the Chief, Operations Division, both to you and to myself, of similar failures. On or about 31 December 1952 he requested you to draft findings of fact regarding the final settlement of the Eudy Claim. Despite several oral followups, it was not until he gave you on 28 January a written query as to status, that you prepared it.
Two recent instances illustrate your failure to think matters through, and take proper action on your own initiative. These are discussed below.
Materiel Command recently furnished a recommended form for Supplemental Agreements. You conferred with me on at least three occasions as to what to do with it, instead of submitting a draft, with recommendations. Even then you failed to note and correct an obvious typographical error in the omission of the word “law” after “public” in the preamble. Further, you proposed changing our “Change Order” form to an obviously unsuitable style based on an obsolete manual. It was necessary for me to show you the inapplicability.
In the matter of a recent City traffic ticket given our chauffeur, it required several reminders from the Executive Officer before you took action. You then attempted to get various persons outside the office to defend him. Questioning by me elicited the information *608 that the U. S. District Attorney’s office is charged with such defense, but that you were reluctant to invoke the procedure, “since the other party to the accident works there, and they might not conduct the case properly.” You failed to consider that any assistance rendered the other party by D. A. personnel would be on a personal basis, and should not affect discharge of official responsibilities. At my direction, you referred the case to the District Attorney, as you should have recommended on your own initiative, and it was then properly handled.
In the light of the above, I have no alternative but to render an “Unsatisfactory” performance rating. Action to process the rating due 28 February 1953 will be postponed until 31 March 1953 in order to afford you an opportunity to reply. You have a right to reply to this letter setting forth any or all evidence you may have regarding the charges outlined above. Your reply addressed to the Commanding Officer, Chicago Chemical Procurement District, 226 W. Jackson Blvd., Chicago 6, Illinois, must be in this office within 10 days of the date ox this letter.
10. On February 27,1953, plaintiff received another letter from Colonel Searle as follows:
Under date of 25 February 1953, you were advised by letter that it was the intention of the Commanding Officer, Chicago Chemical Procurement District, to give you an unsatisfactory performance rating for the year ending 28 February 1953. Owing to the restrictions, imposed by regulations relative to advance warning time, the letter in reference is hereby withdrawn.
You have this date been given a performance rating of “Satisfactory.” Your attention is invited to the following remarks which I have entered thereon:
“Above rating is ‘qualified’. Due to failure to observe advance warning time limitations required by regulations for administering an ‘.Unsatisfactory’ rating, the above is given.”
11. On March 2, .1953, the plaintiff received a letter from Colonel Searle notifying him that it was proposed to remove him on April 3, 1953, for inefficiency. The letter contained charges which formed the basis for the removal action. The specifications, except for slight changes in the final paragraph, were, in substance, the same charges which had been used to justify the proposed performance rating of “Unsatis *609 factory” discussed in Colonel Searle’s letter of February 25, 1953. Plaintiff was advised of his right to answer the charges personally and in writing and to submit any evidence desired within ten days from receipt of the notice. On the following day, March 3, 1953, Colonel Searle placed in the office file a memorandum reviewing the unsatisfactory nature of plaintiff’s performance from the time of his appointment in 1951. In this memorandum Colonel Searle indicated that he had become aware of plaintiff’s deficiencies as a legal adviser at an early stage of plaintiff’s employment, but that because plaintiff had indicated his intention to retire in the near future when he reached the age of 60 in August, 1952, Colonel Searle had decided to avoid placing any unfavorable criticism in plaintiff’s official record and to make the best of his services for the time being. Colonel Searle noted that plaintiff kept postponing his proposed retirement and that in February, 1953, he had advised plaintiff that he would have to give him an unsatisfactory performance rating unless he resigned as of March 31, 1953. Colonel Searle concluded with the statement that in retrospect, he felt it would have been preferable to have been more explicit by memorandum to plaintiff’s 201 file beginning in April of 1952 and to have promptly initiated separation procedures.
12. By letter dated March 12,1953, plaintiff replied to the letter of March 2,1953, to which he referred as “Separation for Inefficiency.” In his reply, plaintiff contended that the proposed action was in violation of the Performance Bating Act of 1950, and that the charges for the most part related to a time prior to his receipt of a rating of satisfactory performance. Plaintiff also denied all charges against him.
13. On March 18,1953, plaintiff was informed of the decision of the Chicago Chemical Procurement District regarding his removal. The decision was as follows:
Keceipt is acknowledged of your letter of 12 March 1953, submitted in reply to the charges contained in the notice of proposed adverse action dated 2 March 1953.
Beference is made to your various comments regarding the matter of performance rating. The present action is “separation-inefficiency” in accordance with CPB *610 SI. 4-3 and bears no relation to performance rating. Yonr attention is invited to the following continuation of CPE Sl.4~3b to which you referred.
“Action to separate an employee for inefficiency may be taken whenever deficiencies in duty performance warrant the action, even though the last performance rating on record indicates satisfactory performance.”
In the event that you feel that there have been injustices in connection with the performance rating, your proper course is to appeal on that separate matter to the regularly established Grievance Committee of this installation.
A detailed review of the remainder of your reply indicates that you have not satisfactorily disproved any of the facts alleged. Further, these facts taken together justify the conclusion that your performance has been inefficient in comparison with that which should properly be expected from an employee of your grade, position and responsibilities.
Therefore, after careful consideration of the charges and your reply, decision has been reached to effect your removal for inefficiency, effective at the close of business 3 April 1953 as proposed in the advance notice.
You have the right to request review of this decision under the grievance procedure as provided in Civilian Personnel Regulations El within 15 calendar days after the effective date of this action; or, as a veteran preference eligible, you may elect to appeal your removal to the Director, Seventh Eegional Office, United States Civil Service Commission, Chicago, Illinois, within 10 calendar days after the effective date of removal. *****
Accordingly, plaintiff was removed from his position as Attorney-Adviser, effective April 3, 1953.
14. On April 1, 1953, plaintiff appealed the decision of the Chicago Chemical Procurement District, to the Seventh Eegional Office of the United States Civil Service Commission. On April 8, Colonel Searle prepared a memorandum analyzing plaintiff’s answer of March 12, 1953, to the letter of charges. On April 9, 1953, Colonel Searle executed an affidavit concerning his action separating the plaintiff for inefficiency and stating that the circumstances surrounding such action were fully discussed in two memoranda, one dated *611 March 3, 1953, and one dated April 8, 1953, which, memo-randa and attachments thereto were made a part of the affidavit.
15. On May 11, 1953, a hearing was held by the Seventh Eegional Office of the Civil Service Commission under section 14 of the Veterans Preference Act of 1944. The plaintiff appeared in person and was represented by counsel. Mr. Salvi, who had formerly been an assistant to the plaintiff in the legal adviser’s office, appeared and testified for the plaintiff. Colonel Searle appeared for the employing agency. There were no other witnesses. There were received in evidence on behalf of the employing agency the various memoranda, letters and the affidavit of Colonel Searle, all described in the previous findings, relating to the unsatisfactory nature of plaintiff’s work. At the hearing Colonel Searle questioned the plaintiff concerning his work and his often expressed intention to retire. Plaintiff’s testimony was in general vague and unresponsive. Mr. Salvi’s testimony was also vague and on the whole noncommittal. The attorney for the plaintiff took the position that plaintiff’s separation was in violation of the Performance Rating Act of 1950. Pie introduced in evidence statements and affidavits concerning plaintiff’s prior satisfactory service while on active duty in the Army but, aside from Mr. Salvi’s testimony, he offered no evidence of plaintiff’s satisfactory service as a civilian employee in the Chicago office.
16. On June 1, 1953, the 7th Civil Service Commission Region reversed the decision of the agency removing the plaintiff from employment and ordered his restoration to his position. The regional office made the following findings:
(a) There was no showing that because of decisions rendered by the plaintiff the Government had suffered in any way.
(b) There was no specific showing that decisions of plaintiff were substantially wrong.
(c) Plaintiff was entitled to be officially told that he was not performing his duties properly. There was no evidence that this was done.
(d) Separation of plaintiff from his position was an unreasonable act and not made for such cause as will promote the efficiency of the service as provided under section 14 of the Veterans Preference Act.
*612 17. On June 16,1953, the Chicago Chemical Procurement District appealed the .decision of the Seventh Eegion to the Board of Appeals and Eeview, Civil Service Commission, accompanying the appeal with four documents including an affidavit dated June 8, 1953, of Eugene F. Graber, a reserve officer who had served for two weeks on active duty in the Chicago Chemical Procurement District and had had numerous contacts with the plaintiff during that period; a memorandum dated June 5, 1953, from Mr. Eobert E. Bright, who had been the attorney-adviser in the Office, Chief Chemical Officer, during the time plaintiff had served as legal adviser in the Chicago District; an affidavit dated June 12, 1953, of Lt. Col. Vess, Deputy Chief of the Operations Division in the Chicago office of the employing agency. The record does not indicate the nature of the fourth document submitted to the Board of Appeals and Eeview by the employing agency.
.18. By letter dated July 2,1953, the Board of Appeals and Eeview, Civil Service Commission, wrote to plaintiff as follows:
Eeference is made to the appeal, under Section 14 of the Veterans’ Preference Act of 1944, submitted in the above case.
Enclosed for whatever comment you may care to make is copy of the written representations submitted in support of this appeal. Tour reply, in duplicate, should be forwarded to this office within ten days from the date of receipt of this letter.
For some unexplained reason, the additional documents submitted by the employing agency in support of its appeal were not forwarded to plaintiff with the letter of July 2, 1953, and plaintiff went to Washington prior to July 16,1953, and examined these additional documents which were on file with the Civil Service Commission. He made detailed notes on the contents of these documents, apparently for the purpose of his answer resisting the agency’s appeal.
19. On July 16,1953, plaintiff transmitted his reply to the appeal of the Chicago Chemical Procurement District, appending the following note to the transmittal letter:
Note: Should the Board give any consideration to the unsworn memorandum of Mr. Bright, I request an op *613 portunity to answer same; otherwise, I take the position that it is not proper evidence and therefore make no comment concerning same.
In the reply, plaintiff filed his objections to the appeal of the agency, including the four enclosures which accompanied the appeal.
20. Part 22 of the Civil Service rules and regulations relating to further appeals to the Board of Appeals and Review contains the following provision respecting Board of Appeals and Review procedures in effect at the time of the employing agency’s appeal in June of 1953 :
(c) Board of Appeals amd Review procedures. The Board of Appeals and Review will review the entire record of such further appeals. In its discretion, the Board may afford the parties an opportunity to appear personally and present oral arguments and representations on the procedural aspects of the case and merits of the appeal, but no evidence will be considered by the Board which could have been submitted at the time of the original appeal to the Office of the Chief Law Officer or regional office. If alleged new evidence is offered which was not available at the time of original appeal, the Board will consider whether the evidence is actually new and of such material consequence that the case should be remanded to the office of original jurisdiction. If the case is remanded the appeal will begin anew in the office of original jurisdiction. In exceptional cases the Board may in its discretion receive and consider new evidence without remanding the case and may afford the parties an opportunity to produce witnesses and cross-examine witnesses.[1]
21. On June 11, 1954, the Board of Appeals and Review recommended that the Civil Service Commission approve its decision that the removal of plaintiff from his position for inefficiency was warranted and justified, thereby reversing the previous decision of the Seventh Region, and upholding the removal action of the agency. In reversing the Seventh Region, the Board of Appeals and Review stated in part as follows:
The Seventh Region in its handling of this case permitted extraneous matters to enter into its decision and *614 considered only the matter of performance rating. It did not properly resolve the questions (1) as to specificity and detail of charges, and (2) as to merits with respect to substantiation of charges and support for the adverse action taken.
In order to determine whether the procedural requirements of law and Commission ^Regulations have been met with respect to specificity and detail of the charges, and whether on the merits of the case the charges have been substantiated and whether they constitute justification for the adverse action taken, the following facts are offered for consideration.
The removal action was taken pursuant to a notice of proposed separation dated March 2, 1953, charging him generally with inefficiency. Specific reference was made to a memorandum of January 28, 1952, from the Commanding Officer to Mr. Atkinson covering unsatisfactory elements in his handling of problems in connection with the Keystone Gage and Tool Company contract. Specific reference was also made to a discussion the Commanding Officer had on April 1, 1952, with Mr. Atkinson at which time the matter of his unsatisfactory performance of work assignments was discussed and certain examples were cited as generally characteristic of his work.
The Board then discussed the particular specifications under the general charge of inefficiency separately and in detail.
The Board found that on the merits, all of the specifications supporting the charge of inefficiency had been substantiated by the record except the first specification which the Board held to be defective for lack of specificity. The Board found that the remaining specifications were sufficient to justify the removal action taken by the employing agency pursuant to section 14 of the Veterans Preference Act. The Board noted that the Seventh Begion of the Civil Service Commission had not discussed the sufficiency of the specifications nor whether they were substantiated by the record. The Board mentioned the additional documents submitted by the employing agency in connection with its appeal in the following paragraph:
Affidavits and memoranda in the file furnished by various officials of the agency who had occasion to request legal advice from Mr. Atkinson and who had personal *615 knowledge of the specific incidents cited in the letter of charges, tend to support the allegations regarding the deficiencies for which he has been criticized and justify the conclusion his work has not been commensurate with his grade, position, and responsibilities; such as, failure to grasp the essentials of problems as presented to him; failure to take into account all relevant factors; preoccupation with inconsequential details which divert his attention from the real points involved; and failure to give a clear-cut decision.
22. The Board of Appeals and Keview submitted the case to the Civil Service Commissioners which adopted the recommendations and conclusions of the Board to the effect that the charge of inefficiency upon which the removal action was based was sustained by the weight of the evidence. On September 3,1954, the Civil Service Commission advised the employing agency that the removal action was warranted and justified and on the same date this decision was communicated to the plaintiff.
23. On November 5,1954, the Commission responded to an inquiry made on behalf of the plaintiff by a' United States Senator, pointing out that the initial decision of the Seventh Eegion of the Commission had been in error in not restricting its considerations to the determinations required in an appeal under section 14 of the Veterans Preference Act and in adjudicating instead only questions which might properly have arisen under the Performance Bating Act of 1950. The Commission stated that it had accepted for review the agency’s appeal letter and all supporting documents, including the four additional documents which had not been placed in evidence in the hearing at the Seventh Begion. The Commission stated that the plaintiff had been given an opportunity to review such new material and to submit any answer he desired; that the answer submitted by plaintiff, together with enclosures, had been made a part of the record on appeal and been given such weight as the record warranted.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is therefore dismissed.

As amended December 18, 1952, effective December 19, 1952.

 As amended December 18, 1952, effective December 19, 1952.